# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| DEXTER HOSPITAL, L.L.C, d/b/a MISSOURI SOUTHERN HEALTHCARE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. **1:06CV00146HEA** |
| SHIRLEY BLANCAS, M.D., | ) ) ) | |
| Defendant, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Dismiss Counts I and II of Defendant's Counterclaim; her claims for emotional distress in Counts III and IV; and her claims for attorney's fees in counts II through IV, [Doc. No. 15]. For the reasons set forth below, the motion is granted as to Count I of the counterclaim, and denied as to Count II. Additionally, Defendant will be granted leave to amend her claims for emotional distress in Counts III and IV of the complaint, and the requests for attorney's fees will be stricken from Counts II through IV.

### Introduction

Plaintiff Dexter Hospital, L.L.C, d/b/a Missouri Southern Healthcare ("Dexter Hospital") filed a petition for declaratory judgment against Defendant Dr. Shirley Blancas ("Blancas") to determine the enforecability of an alleged employment

1

contract. Blancas filed an answer and four counterclaims for affirmative relief. Plaintiff has filed the instant motion seeking to dismiss the Counterclaims.

## Standard for Motion to Dismiss

The standard for granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) are well settled. "In appraising the sufficiency of [a claim] we follow. . . the accepted rule that [the claim] should not be dismissed unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also County of St. Charles v. Missouri Family Health Council*, 107 F.3d 682, 684 (8th Cir. 1997). "The court assumes as true all factual allegations contained in the complaint." *Quinn v. Ocwen Federal Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006). "However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." *Id*. "[W]ritten instruments attached to the complaint become part of it for all purposes. For that reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint." *Id*. (Internal citations omitted). "[D]ismissal is appropriate as a practical matter. . . only in the unusual case in which the plaintiff includes allegations that show on the face

2

of the complaint that there is some insuperable bar to relief." *Ring v. First Interstate Mortgage Inc.*, 984 F.2d 924, 926 (8th Cir. 1993).

## **Factual Allegations**

The allegations of Defendant's counterclaim are as follows: Plaintiff Dexter Hospital and Defendant Blancas entered into employment negotiations sometime between May and July, 2006. Dexter Hospital was introduced to Blancas through Brett Crane ("Crane"). Crane worked for TimeLine Recruiting ("TimeLine"), which provided physicians recruitment services to hospitals. Crane and TimeLine, acting as agents on behalf of Dexter Hospital, encouraged and requested Blancas to apply for a position with Dexter Hospital. At all times during the negotiation, Blancas was licensed to practice family medicine, but she was not board certified or board eligible in the practice of family medicine. Blancas informed TimeLine and Crane that she was not board certified or board eligible in family practice medicine when she provided her curriculum vita to them. Plaintiff Dexter Hospital knew that Blancas was not board eligible. Crane informed Blancas that he had confirmed with Crawford twice that Dexter Hospital had the ability and the desire to employ her to perform family practice medicine for its patients despite not being board eligible or board certified. At no time did Dexter Hospital, TimeLine, or Crane inform Blancas that she was not qualified for the position.

As a result of communications between Crane, Crawford, and Blancas, Crawford requested that Blancas visit Dexter Hospital as soon as possible, because Dexter Hospital was considering employing her even though she was not board certified or board eligible. Blancas agreed to visit Dexter Hospital from June 29, 2006 through July 1, 2006. Dexter Hospital agreed to pay a portion of Blancas' expenses. When Blancas visited Dexter Hospital, she expressed concern about "fitting in" because of the fact that she was not board eligible or board certified. She was reassured by Crawford and other Dexter Hospital staff that she "would be a great fit." During and after Blancas' visit, Crawford and Crane communicated that Dexter Hospital wanted to employ Blancas. Blancas also communicated that she desired to work for Dexter Hospital. In these communications many terms of Blancas' employment were discussed, including: when her employment would commence, her compensation, Blancas' license requirements, Blancas' duties, reimbursement for expenses, the fact that Blancas was not required to be board certified, and various other terms.

On July 5, 2006, Crawford sent Blancas an e-mail which read in relevant part: "Dr. Blancas, I am this morning having my secretary. . . send you a complete contract. Should you agree, and I hope you will, please sign and return two copies. I will then send one back to you. I am not sure of when you could start, please fill in

if you know. . ." ("7/5/2006 e-mail"). On July 6, 2006, Blancas received an e-mail from Crawford's secretary containing a document titled "Employment Agreement." The Employment Agreement mistakenly contained language in paragraph 7(c) that required Blancas to be board certified or board eligible in family practice to enter into the contract. Paragraph 7(c), entitled "Warranties of Physician," stated "[a]s a material inducement to Hospital employing Physician, Physician hereby requests, warrants and covenants to Hospital, except as otherwise disclosed in writing to Hospital, prior to the execution of this Agreement, that: (c) Physician. . . is Board certified or Board eligible in the specialty of Family Practice." This language in 7(c) directly contradicted the employment arrangement that Dexter Hospital and Blancas discussed previously.

After receiving the Employment Agreement, Blancas contacted Crane to discuss paragraph 7(c). Crane stated that he had confirmed that the language of paragraph 7(c) was not a term of the offer of employment. Crane stated that paragraph 7(c) was part of the "standard contract form," that he knew of Blancas' lack of board eligibility, and that he had confirmed this fact with Crawford. Crane then instructed Blancas to draw a line through the words in paragraph 7(c) and to place her initials and the date on the document. Blancas attached a signed copy of the contract to her Answer and Counterclaims. The term of the Employment

5

Agreement was for three years. Paragraph 19(c) of the Employment Agreement stated that it represented "the complete and entire Agreement of the parties [t]hereto and supercedes all prior agreements. . . whether written or otherwise, relating to the subject matter [t]hereof and shall be modified only in accordance with its terms."

Following her acceptance of the contract, Blancas gave notice of her intention to leave her employer in Wisconsin; gave notice to her landlord; found childcare in Missouri; and instructed her fiancé to give notice to his employer of their intentions to move to Missouri. Following her acceptance of the contract, Dexter Hospital notified Blancas that the hospital would not hire her because she not board certified. As a result of the Blancas' preparations to move to Missouri, she could not return to her previous employer in Wisconsin, her fiancé lost compensation, and her family incurred costs related to making moving preparations. Blancas further alleges that she would not have taken these actions had she not relied on Dexter Hospital's promise, and that Dexter Hospital should have foreseen the actions that she would take in reliance on their agreement.

## Discussion

## Count I: Claim for Breach of Contract

The Missouri statute of frauds governs which contracts are valid under Missouri Law. The statute states, in relevant part, that:

> [n]o action shall be brought. . . upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some other memorandum or note thereof, *shall be in writing and signed by the party to be charged therewith*, or some other person by him thereto lawfully authorized. . .

Mo. Rev. Stat. 432.010 (1992)(emphasis added). After determining that a contract is valid, to prevail on a claim for breach of contract a party must prove "(1) the existence of a contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages." *Hanna v. Darr*, 154 S.W.3d 2, 5 (Mo. App. Ct. 2004). Finally, "when a purported acceptance introduces new or variant terms, the purported acceptance amounts to a counteroffer and rejection of the original offer." *Londoff v. Conrad,* 749 S.W.2d 463, 435 (Mo. Ct. App. 1988).

Under Missouri law, there is no set of facts that would support a ruling in Blancas' favor. Paragraph 7 of the employment agreement requires that Blancas meet all of the warranties contained in subparagraphs (a) through (I) except those that Blancas was unable to meet and had disclosed to the Dexter Hospital, in writing, prior to the execution of the agreement. Blancas alleges that she submitted materials to Crane and TimeLine indicating that she was not certified in family practice, and that they, acting as agents on behalf of Dexter Hospital, accepted that material. Taking the Defendant's allegations as true, Blancas' act of crossing out

7

paragraph 7(c) was not a modification of the contract because, in accordance with the exception clause of paragraph 7, Blancas had already disclosed in writing to Dexter Hospital that she was not board certified.

Defendant's claim, however, does not meet the requirements of the statute of frauds. The term of alleged employment contract was for a period of three years. According to the Missouri statute of frauds, the contract was required to be in writing and signed by the parties thereto. The copy of the contract attached to Defendant's counterclaim was not signed by a representative of Dexter Hospital, nor did Defendant allege that any representative had ever signed the contract. Without a signature, or the allegation of a signature, the alleged contract is invalid under Missouri law.

Defendant Blancas also alleges that the 7/5/2006 e-mail constituted an offer by Dexter Hospital to employ her as a family practice physician. According to Defendant, the terms of the 7/5/2006 offer are set out in the Employment Agreement she received on July 6, 2006. Again, Defendant has not alleged that Plaintiff Dexter Hospital ever signed or accepted the Employment Agreement. Furthermore, paragraph 19(c) of the employment agreement received on July 6 plainly stated that it superceded all other agreements. Therefore, the 7/5/2006 e-mail cannot constitute a contract in Missouri.

## Count II: Claim for Detrimental Reliance

To prevail on a claim of detrimental reliance, known as promissory estoppel under Missouri law, Defendant must prove that there was (1) a promise; (2) that the promise was detrimentally relied upon; (3) that the promisor could reasonably foresee the precise action the promisee took in reliance; and (4) injustice can only be avoided by enforcement of the promise. *See Chesus v. Watts*, 967 S.W.2d 97, 106 (Mo. Ct. App. 1998). Defendant has sufficiently alleged all elements of a claim of promissory estoppel. Plaintiff Dexter Hospital concedes that "the job offer was a promise, but only if Defendant agreed to the terms of the contract as it were [sic] sent to her." Plaintiff's Memorandum in Support of its Motion to Dismiss Counter Claims I and II of Defendant Blancas' Counterclaim and Her Claim for Attorney's Fees, pg. 4-5. Taking Defendant's allegations as true, the act of crossing out paragraph 7(c) of the employment agreement was not a modification of the agreement because she alleges that she submitted written statements notifying Dexter Hospital that she was not board certified. This action meets the requirements of paragraph 7 of the employment contact. Further, Blancas alleges that she relied on Dexter Hospital's promise to her detriment, that Dexter Hospital could have reasonably foreseen her actions, and that an injustice would result if the promise was not enforced. Blancas has, therefore, sufficiently pled the elements of

9

detrimental reliance.

## Counts III & IV: Emotional Distress

Defendant's counterclaims for fraudulent misrepresentation (Count III) and negligent misrepresentation (Count IV) include prayers for damages resulting from emotional distress. Dexter Hospital seeks to strike the requests for emotional distress damages, claiming that Defendant has failed to plead the elements necessary to obtain emotional distress damages. Under Missouri law, "[t]o recover damages for emotional distress, a plaintiff must show that. . . the emotional distress or mental injury [is] medically diagnosable and [is] of sufficient severity so as to be medically significant." *Pendegrist v. Pendergrass*, 961 S.W.2d 919, 923 (Mo. Ct. App. 1998). In fraud cases, "[n]o recovery is allowed for mental suffering. . . absent physical injury, unless the tortfeasor acted willfully or maliciously." *Fetick v. American Cyanamid Co.*, 38 S.W.3d 415, 420 (Mo. 2001) (en banc). "[E]motional distress, to be compensable as damages for willful fraud, must be medically diagnosable and significant." *Id.* Although Defendant has claimed that Plaintiff's conduct was willful in her fraudulent misrepresentation claim, Defendant has not claimed a medically diagnosable or significant mental injury in either the fraudulent misrepresentation or the negligent misrepresentation claims. The issue, therefore, is whether, under Missouri law, Defendant is required to plead the elements of a claim

for emotional distress when Defendant has requested damages for emotional distress. The answer is yes.

Missouri courts have held that, *to recover damages* for emotional distress resulting from fraud or negligence, the claimant must prove that his or her injuries were medically diagnosable or significant. *See Pendegrist*, 961 S.W.2d at 923; *Fetick*, 38 S.W.3d at 420. This requirement specifically contemplates that, in addition to the primary elements of the negligence or fraud claim, elements related to the requested emotional distress damages must be claimed as well. *See Bass v. Nooney Co.*, 646 S.W.2d 765, 772-73 (Mo. 1983) (en banc). In her complaint, Defendant simply claims that she has "suffered and continues to suffer emotional distress." This allegation, standing alone, is insufficient to satisfy the legal requirements of her claim. *See Quinn*, 470 F.3d at 1244. Failing to claim that the injury is medically diagnosable or significant does not, however, mean that Defendant Blancas cannot prove that her injuries were of such a nature. Federal Rules of Civil Procedure Rule 15(a) requires that "leave [to amend] shall be freely given when justice so requires," thus Defendant shall be allow to amend her complaint in accordance with this order.

## Counts II-IV: Attorney's Fees

Finally, in her claims for breach of contract, detrimental reliance, and

fraudulent misrepresentation, Plaintiff requests damages of attorney's fees. Defendant seeks to strike these requests, claiming that there is no authorization for plaintiff to receive attorney's fees. Missouri Courts follow the "American Rule," under which, absent statutory authorization or contractual agreement, each party generally bears his or her own attorney's fees. *See City of Cottlesville v. St. Charles County*, 91 S.W.3d 148, 150 (Mo. Ct. App. 2002) *citing David Rankin, Jr. Tech. Inst. v. Boykins*, 816 S.W.2d 189, 193 (Mo. 1991). Missouri courts recognize several exceptions to the "American Rule," but these exceptions are limited to "very special" or "very unusual" circumstances. *See id*. Defendant has alleged no provision in the alleged contract nor any statutory authority under which she would be entitled to recover attorney's fees. Further, this case does not present the type of "very special" or "very unusual" case that would allow attorney's fees. *See id.* This is simply a contract dispute. Defendant's request for attorney's fees in counts II, III, and IV will be stricken from those counterclaims.

## **Conclusion**

For the forgoing reasons, the Court finds that Defendant's counterclaim for breach of contract in Count I fails to state a cause of action because Defendant can prove no set of facts under which she would be entitled to relief. Defendant has

12

sufficiently pled her claim for detrimental reliance in Count I. Defendant is not entitled to the attorney's fees claimed in Counts II through IV. Finally, although Defendant has not sufficiently pled her claim for emotional distress damages, the Court will grant Defendant leave to amend those claims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss, [Doc. 15], is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Count I of Defendant's Counterclaim is dismissed.

**IT IS FURTHER ORDERED** that Defendant's claim for attorney's fees is stricken.

**IT IS FURTHER ORDERED** that Defendant's claims for emotional distress are dismissed. Defendant is granted 14 days from the date of this Order in which to file an amended Counterclaim.

Dated this 2nd day of April, 2007.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE